**FILED**

CHRISTIAN K. JENSEN ESQ. 214239
1979 ELINORA DRIVE
PLEASANT HILL , CA 94523

P.o. Box 4601
Barkeley , CA 94704

JUN 2 0 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

CHRISTIAN K. JENSEN ESQ.,
          Plaintiff,
    vs.
BERNARD C. JENSEN, KURT M. JENSEN,
ERIC R. JENSEN, JUDITH R.
JENSEN.,BRYAN FREELAND, LEAH
FREELAND, GARRETT WILTON, DOES 1-
100
          Defendant

CV 08

Case No.   3030   WDB

) COMPLAINT FOR DAMAGES, APPLICATION
) FOR PRELIMINARY INJUNCTION AND
) TEMPORARY RESTRAINING ORDER
)
)
)
)
)
)
)
)
)

Dated this 13th day of June, 2008

1979 ELINORA DRIVE
PLEASANT HILL , CA 94523
CHRISTIAN K. JENSEN ESQ.

**Statement of the Issue:**

Are defendants negligent in attempting to remove Judith R.
Jensen and property from 1979 Elinora Drive Pleasant Hill,
CA?

Did defendants assault plaintiff and put him in fear for
his personal safety? Did defendants put plaintiff in fear
for his personal safety by attacking his body through the

use of this medium-metal chip in mouth, to send electricity through to plaintiff's heart, head and body and cause intense pain and cause plaintiff to fear for his life?

Did defendants invade plaintiff's privacy by using the medium of the "chip" metal piece; obtaining information about plaintiff's private activities and words, archiving this information, sending it to other defendants to look at, solicit others to use this medium to monitor plaintiff's private activities and business actions to damage and exploit plaintiff by any means at their disposal, and share this private information with others plaintiff interacted with and had or attempted to have personal or business relations with?

Did plaintiff interfere with plaintiff's business relations by taking advantage of the chip in plaintiff to discover who he contacts, and sharing the information they were not privileged to know with these contacts, thereby cause them to not perform the contract, overcharge, or otherwise render the contract unfavorable to plaintiff?  To harm plaintiff's employment/obtaining money through outside employment in employment agencies, law firms etc?

Did defendant Judith R. Jensen make agreement to help plaintiff and plaintiff would repay that consideration plaintiff depended and relied on and at the point plaintiff is ready to remove material, did defendants quickly move to undercut plaintiff's support to prevent plaintiff from removing material and expose themselves to liability?

Did defendants, by agreeing to harm plaintiff by stimulating and sending electricity to and harming plaintiff through this medium, soliciting others to harm plaintiff, sharing information about plaintiff, monitoring plaintiff's activities location and conversation, intend and conspire in furtherance of this illegal agreement to harm plaintiff?

**Statement of the Case**

**Statement of Facts-Factual Background**

This case is occurring now.  The root of the situation lies in defendant's abuse and exploitation of plaintiff since at least May 2004.  Plaintiff is aware of the nature of defendant's abuse and is bringing the appropriate causes of action and applications for injunctive relief so he can stop defendants from continuing to interfere with his personal life, protect his health, business income, and personal property, and preserve his well-being and personal safety.  An order from the court for injunctive relief until proceedings and discovery are required in order for plaintiff to save his personal safety and well being.

**N.B. On the night of June 8, plaintiff was finishing this complaint.  He left the computer lab where he was working at 11 pm.**

**At 11:10- 11:15 pm, he was biking home on Contra Costa Boulevard in Pleasant Hill, and started to cross to go onto Susan Drive.  He saw from the corner of his eye a white van come speeding at him from Contra Costa Boulevard, heading toward his side.  It was defendant Bernard C. Jensen. Bernard C. Jensen had located plaintiff and was driving at him at great speed, intending to hit him.  Plaintiff dodged the van and proceeded back to Contra Costa Boulevard.  He watched defendant's van squeal around into a nearby parking lot and speed off south.  Plaintiff immediately sped home as fast as he could to call 911.  Plaintiff gave his report, and seeks order from the court to stop defendants immediately through injunction so that investigation into defendant's activities can immediately take place.**

CAUSE OF ACTION A: USC. 1982. PLAINTIFF CONTACTED LOCAL POLICE ABOUT THE THREATS AND ATTEMPTED SERIOUS BODILY INJURY, ON MAY 19 AND JUNE 9 RESPECTIVELY. LOCAL POLICE HAVE NOT ACTED TO FILE REPORT.

### Summary of Argument: Reasons for granting injunction/Causes of Action

#### I. Negligence
Defendants are negligent in trying to remove Judith R. Jensen and property from 1979 Elinora Drive because of the foreseeable harm to plaintiff's business, income, property and health that such a move would incur.

IN ADDITION, PLAINTIFF HAD CAR STOLEN IN BERKELEY WITH HIS SUIT AND VALUABLES, PLAINTIFF CALLED 911, BERNARD WHO FOLLOWED HIM. PLAINTIFF WAS KNOWS IT IS DEFENDANT, JUST LEAVING LIBRARY AND SAW CAR LEAVE, SEE NEXT PAGE

USE OF TELECOMMUNICATIONS TO HARM PLAINTIFF
AND PLAINTIFF'S PERSONAL LIFE. BREACH OF PLAINTIFF'S

**II. Conspiracy** COMPUTER FILES, PERSONAL INFORMATION.
HARASSING/THREATENING TELEPHONE CALLS.

Defendants engage in concerted action to accomplish the
wrongful unlawful purpose of harming plaintiff's health,
business, professional business income and property by
taking advantage of plaintiff's health situation and in
their attempt to remove Judith R. Jensen and property from
1979 Elinora Drive.

**III. Invasion of Privacy**

At least since May 2008, and more likely since at least
August 2007 if not earlier, defendants have invaded
plaintiff's privacy by intruding upon plaintiff's private
affairs and solitude regarding plaintiff's health, injury,
and business income.

FROM K:

PLAINTIFF MENTIONED CARE STOLEN
TO DEFENDANT JUDITH JENSEN. E/19.
DEFENDANT DID NOT EXPRESS SURPRISE.

**IV. Defamation** PLAINTIFF MENTIONED BURN IN 6/20.

DEFENDANT DID NOT SAY ANYTHING OTHER THAN

Defendants defamed plaintiff by communicating to Judith R. SHE CALLED
Jensen and other third parties language tending to lower POLICE REGARDING
plaintiff's reputation to Judith R. Jensen and to members PLAINTIFF ONLY.
in the community. PLAINTIFF ASKED ABOUT HIS SUIT AND

DRIED SITES AND OTHER PROPERTY IN CAR, DEFENDANT
**V. Fraud/Deceit** DECLINED ANSWER. PLAINTIFF ASKED ABOUT BURNED,

KURT ERIC JENSEN AND WHETHER A THEY IT HAD COME
Defendants have suppressed and concealed and are currently TO PLAINTIFF'S
suppressing and concealing vital information they have come HOUSE.
into possession regarding plaintiff's health, injury, and DEFENDANT
privacy, and actively and intentionally concealed such DECLINED
information from plaintiff for their common purpose of ANSWER.
harming plaintiff. (See Conspiracy II supra)

PLAINTIFF HAS
**VI. Conversion** RESTRAINING ORDER AGAINST
+ IF 54 DEFENDANTS.
Defendants converted plaintiff's property by removing and
destroying it in August 2004, April 2005, June 2007, and
May 2008.

**VII. Assault**

Starting in May 2004 to August 2004, to May 2008,
defendants have placed plaintiff in reasonable apprehension
for his personal safety.

CAUSE OF ACTION C: - MALICIOUS PROSECUTION
JUDITH R. JENSEN TELEPHONED POLICE OF PLEASANT HILL
WITHOUT GROUNDS FOR CRIMINAL LIABILITY -
PLAINTIFF IS DISPOSSESSED AND FEARS FOR PERSONAL
SAFETY AND PERSONAL PROPERTY

## VIII. Intentional Infliction of Emotional Distress

At least since May 2004, defendants have engaged in
concerted and intentional outrageous conduct with the
intent to cause plaintiff severe emotional distress and
have caused severe emotional distress to plaintiff.

## VIIII. Negligent Infliction of Emotional Distress

Since May 2004 defendant negligently inflicted emotional
distress by consistently abusing plaintiff through their
abuse of alcohol and threats to plaintiff.   Since October
2007, defendant negligently inflicted emotional distress by
ignoring plaintiff's information he provided to defendant
concerning his health, business, and business income.
Defendant negligently denied and ignored plaintiff's
information given to defendant about what needed to be
accomplished to improve plaintiff's health, business, and
business income to maintain his personal safety and well-
being.

## X. Nuisance

Defendant's continuing conduct with regards to information
they exploit concerning plaintiff's injury and situation,
crank phone calls, knocking on the front door and running,
and other actions of abuse and harassment toward plaintiff
and destruction of plaintiff's property constitute a
continuing nuisance directed at harming, annoying and
threatening the plaintiff.

## XI. Trespassing

Since April 2005, defendants have repeatedly and
consistently trespassed onto plaintiff's property to
deface, injure, and destroy the mail box, plants, trees,
flowers, garden furniture and fixtures, and have thrown
feces, garbage, cigarettes, and beer cans onto plaintiff's
property, change the sprinkler settings and have entered
into plaintiff's property through the backyard windows for
the purpose of removing small items from plaintiff's house
all in a concerted effort to seriously alarm, annoy and
threaten plaintiff.

## XII. Breach of Contract

Defendant breached agreement with plaintiff to allow
plaintiff ensure his health, professional business income,
and personal safety before removal from 1979 Elinora Drive,
Pleasant Hill, CA.

**Argument**

## I. Negligence

A defendant is negligent when: 1)they owe a duty not to
harm plaintiff, 2)can foresee the risk caused by their
behavior, breach their duty in causing the injury, 3) the
harm that results from defendants conduct is caused by
defendants behavior, 4) it is the legal (proximate) cause
of defendant's behavior, and 5) plaintiff has suffered very
severe injury or damages as a result of defendant's
behavior. see Hoyem v. Manhatten Beach City School District
(1978) 22 Cal 3d 508, 513-4, 150 Cal Rptr. 1, 585 P.2d 851;
United States Liab. Ins. Co. v. Haidinger-Hayes Inc, (1970)
1 cal 3d. 586, 594, 83 Cal Rptr. 418, 463 P 2d 770; Koepke
v. Loo (1993) 18 Cal App 4th 1444. 1448-9, 23 Cal Rptr 2d
34.

### Elements of Negligence:

Most courts summarize the elements of actionable negligence
as a legal duty of care owed by defendant either to
plaintiff or to the class of which plaintiff is a member,
an act of omission b y defendant that is a breach of the
duty owed to plaintiff, injury and damages to plaintiff,
and defendant's breach as an actual (or direct) and legal
(or proximate) cause of plaintiff's injury and damages.
(see Hoyem v. Manhatten Beach City School District (1978)
22 Cal 3d 508, 513-4, 150 Cal Rptr. 1, 585 P.2d 851; United
States Liab. Ins. Co. v. Haidinger-hayes Inc, (1970) 1 cal
3d. 586, 594, 83 Cal Rptr. 418, 463 P 2d 770; Koepke v. Loo
(1993) 18 Cal App 4th 1444. 1448-9, 23 Cal Rptr 2d 34.

Both courts and commentators have observed that practicing
trial lawyers now prefer the term "legal cause" over
"proximate cause" Mitchell v. Gonzales (1991) 54 Cal 3d
1041, 1050-1, Cal Rptr 2d 913, 819 P. 2d 872.

**Argument:**

**I. Negligence**
**Defendants are negligent in trying to remove Judith R.
Jensen and property from 1979 Elinora Drive because of the
foreseeable harm to plaintiff's business, income, property
and health that such a move would incur.**

Defendants have threatened to cause harm to plaintiff in
the past.  (See Statement of Facts supra) Since at least
May 2004, defendants have engaged in an active campaign to
malign and abuse plaintiff, and dispossess plaintiff of his
home.
Here, defendants are using financial power to dispossess
plaintiff; defendants are aware of their role in harming
plaintiff, plaintiff's awareness of their role in harming
him, and plaintiff's determination to resolve his injury,
improve his professional legal practice, and establish
himself independently in good health would create serious
legal consequences for defendants.
At the least, defendants know, or in the case of Judith R.
Jensen, reasonably should be aware, that the removal of
Judith R. Jensen from 1979 Elinora Drive would leave
plaintiff in destitution.  Unable to have the stability he
needs to resolve his health issue (which again, it should
be emphasized, plaintiff is now aware of) it is reasonably
foreseeable to defendants that plaintiff would see serious
and irreparable harm to his legal practice and business
income, with consequent loss of the ability of plaintiff to
resolve his pressing health issue, maintain his home and
personal property, and protect his health and well-being.
Plaintiff has informed Judith R. Jensen on numerous
occasions at least since October 2007 that he knows what
needs to be done; hence this action at bar.  Plaintiff has
consistently been met with denial and anger in his urgent
requests in the instant case at present to allow him to
develop his case and resolve his pressing health injury and
rapidly develop his business income to protect himself and
his property.

Defendants are aware of plaintiff's current situation and
have a duty to avoid causing him further harm.  Since
plaintiff now knows what needs to be done to resolve his
injury to his health, and is developing his business income
as an attorney.

Plaintiff has joined the Contra Costa Bar Association,
plaintiff has joined an attorney referral service to
develop his business, and has made large commitments and
investments in his professional practice as an attorney: he
has contracted to have professional legal practice
insurance; he has purchased stationery and advertisements
for his practice in Pleasant Hill, he has made big
investments in business clothing and dress, he has expanded
his skills to become a notary public.  Plaintiff has also
invested in professional accoutrements for his legal
practice.

All these investments plaintiff made to develop his legal
practice would be irretrievably lost if defendants were
allowed to proceed with their threatened conduct of removal
of Judith R. Jensen and property.  Even more importantly,
the loss of income and stability for plaintiff to pursue
his legal action and seek redress and resolvement of his
injury would seriously impact plaintiff's ability to
regaining and retaining his health, personal well-being,
and personal safety.
As the situation stands at the current moment, since the
damage to plaintiff caused exclusively from the removal of
Judith R. Jensen and property would be foreseeable and
irreparable, defendants would negligently cause serious
damage to plaintiff's health if their conduct were allowed
to continue.


II.          Conspiracy


A civil conspiracy is defined as a combination of two or
more persons to accomplish by concerted action a criminal
or unlawful purpose or lawful purpose by criminal or
unlawful means.

A complaint for civil conspiracy states a cause of action
when it alleges the commission of a civil wrong that causes
damage.  The elements of a civil conspiracy are (1) the
formation and operation of the conspiracy, and (2) damages
resulting to the plaintiff from an act or acts done in
furtherance of the conspiracy.  Specifically, the elements
of the conspiracy include concert of action between the
conspirators to accomplish the purpose of the conspiracy
and knowledge on the part of the conspirators of the

conspiracy and its unlawful purpose. (8-note in section check)

## Criminal conspiracy distinguished

There is a clear distinction in the law of conspiracy as applied in criminal and civil cases. While the gist of the crime of conspiracy is the agreement itself, the gist of civil conspiracy is damage t the plaintiff resulting from an act done pursuant to a common design. The doctrines of criminal and civil conspiracy do, however, have some similarities, and civil decisions sometimes use criminal conspiracy cases as authority. (note 12)

The basis of a civil conspiracy is the formation of a group of two or more persons who have agreed to a common plan or design to commit a tortious act. (13)  In most cases, the common plan or design calls for joint action by the conspirators with each playing a part.  Thus the formation of a conspiracy depends on the formulation of a plan for join action to effectuate a common purpose.

Once an agreement to do a wrongful act has been reached, a person may be liable as a conspirator without committing an overt act or without gaining a benefit from the conspiracy(17)

The agreement between conspirators need not be the result of an express agreement but may rest upon tacit assent and acquiescence. (18)

The agreement need not be proved by direct evidence but may be shown by circumstantial evidence that tends to show a common intent. In fact, direct evidence of a conspiracy is difficult to secure in the usual case, so the ultimate fact of a conspiracy must usually be determined from the inferences naturally and properly to be drawn from those matters directly proved. (20)

## Civil "Aiding and abetting"

The theory of civil "aiding and abetting" may be available as an alternative theory in cases.  Aiding and abetting, also known as "concerted action by substantial assistance, (22.2) focuses on whether a defendant gave substantial

assistance to someone who performed wrongful conduct, not on whether the defendant agreed to join the wrongful conduct. (22.3) Liability under this theory requires that: 1) the party whom the defendant aids must perform a wrongful act that causes injury; 2) the defendant is generally aware of his or her role as part of the overall illegal or tortuous activity at the time that the defendant provides the assistance (cf. July 1 06 P starts talking to d of their criminal liability repeats daily asking to stop); and 3) the defendant must substantially assist the principal violation.

A person who joins a conspiracy after its inception is liable for acts of the conspiracy committed prior to the time of joining (30)

A person's membership in a conspiracy may be inferred from the nature of the acts done, the relation of the parties, and the interests of the conspirators (31)

### Scope and Duration of the Conspiracy

The scope of the conspiracy may be inferred from that which was done in furtherance of it and from other surrounding circumstances (52). One method of determining the scope of a conspiracy is to define the harm suffered by the plaintiff and then to include within the scope, all acts done that furthered or perpetuated the harm (53)

In one case, for example, the defendant became involved in a conspiracy to rob the plaintiff and dispose of the property only after the robbery had taken place and some of the property had been eliminated. The court held that as a member of the conspiracy to convert the goods of the plaintiff, he was liable for all the stolen property including that which was disposed of prior to his becoming a member of the conspiracy. The court characterized the harm though the plaintiff as a continuing tort, the duration of which was that time during which the plaintiff was deprived of possession of the stolen property.

### Wrongful Acts Forming Basis of Conspiracy

The basis of conspiracy is always a wrongful act that causes damage to the plaintiff. (55)   Liability ,may be founded on conspiracy to commit an act that constitutes a tort (58 ) as well as criminal (62)Specific torts that are

commonly alleged as the basis of a civil conspiracy are invasion of privacy, defamation, interfering with economic relations, fraud and restraint of trade, and interference with civil rights.

## Argument

Not only are defendants negligent in their threatened conduct in their attempts to remove Judith R. Jensen and property from the Elinora home, but among Bernard C. Jensen, Kurt M. Jensen, and Eric R. Jensen there is an active agreement to cause plaintiff harm.

This is because at some point, probably at least as early as August 2007 if not earlier, but definitely by May 2008, defendants are aware of the nature of the harm plaguing plaintiff, and are actively participating in it.

This is because defendants are exploiting and taking advantage of plaintiff and the small metal chip, a microchip, that was implanted in his mouth in 2000. The reasons for why and how the chip was placed in plaintiff's mouth is outside the scope of this complaint at the moment; it is sufficient to say that it was professionally done when plaintiff was studying for the Bar and someone had access to plaintiff while he slept. The existence of the chip has been revealed in professional medical x-ray and radiological reports as far back as 2003. Plaintiff has made numerous efforts since then to have the metal chip removed in multiple surgeries by trained professional dental surgeons; all efforts to remove it have failed, and the reason is because the chip can be moved to prevent its extraction.

This is why plaintiff is at the case at bar. Defendants have demonstrated they have information regarding this chip of metal and its operation because they act like the original perpetrators who placed it there. The perpetrators could locate plaintiff, showing up at the same time as the plaintiff repeatedly in the most unlikely locations, and seemed to be aware of plaintiff's personal information he discussed with others. The metal chip could also conduct the most outrageous amount of electricity through plaintiff's body, harming plaintiff's ability to breathe, harm his heart rate, and send pain anywhere throughout his body, with the electricity exiting plaintiff's body toward the ground.

In May 2008, after receiving multiple crank phone calls, plaintiff wished to change the telephone number to the house, as he was already facing pressure from Judith R. Jensen's threatened removal, the time frame of developing his professional business income as an attorney and what

would happen to his business and the investments he made in
his legal practice, and of course, how to remove the damn
metal chip which was the source of his troubles.
Until plaintiff discovered that suddenly, for no apparent
reason, both Eric R. Jensen and Bernard C. Jensen, who had
not been heard from for months, as was typical, since
January, suddenly contacted Judith R. Jensen the exact same
day as the order for the number change so Judith R. Jensen
could undo the order and return the number to the old
number.
The following day, plaintiff received a rambling,
disjointed telephone call from Eric R. Jensen, and later, a
more important series of telephone calls from Bernard C.
Jensen:
#1 "Little brother, I think you know by now your games are
up."Bye"
#2 "Little brother, I don't want you… (trails off)…OK I
know what you are doing…"
and #3 "Little brother, everyone is tired, its time for you
to move on…
Don't make me come over there and do something bad (to you
plaintiff)"
Plaintiff became alarmed.  He knew defendant had been
convicted of a violent felony for stabbing someone, was an
incurable alcoholic, had no fixed address or work
situation, and was extremely unstable.  Plaintiff at this
point still had not made any connection with defendants'
behavior and what was actually happening with defendants.
Except for later, on May 19, after thinking about the
threats made toward him, plaintiff decided to act; he
telephoned first the County District Attorney's office to
inquire what he should do.  The DA's office directed
plaintiff to telephone Pleasant Hill police to make an
initial report.
The second plaintiff hung up with the Pleasant Hill Police,
he received a phone call.  It was defendant Bernard C.
Jensen.
Petrified, plaintiff did not answer the telephone; he now
knew Bernard was aware of the situation with plaintiff's
health, and more importantly, could use this information
against plaintiff, including locating plaintiff and hearing
his conversation.
Plaintiff also gained an important insight into the
operation of the microchip: it could be accessed via cell
phone, since that was all defendant Bernard C. Jensen had.
Indeed, a girl in the neighborhood where plaintiff lives,
approximately 14 years old, showed up at the intersection

of Baylor Avenue and Contra Costa Boulevard when he
returned from court June 6 around 4pm. Walking directly
behind plaintiff, she stated loudly "I'm cyber punching you
with my cell phone", and repeated "I'm cyber punching you
with my cell phone". Plaintiff looked behind him; she
looked directly at plaintiff when saying this. She then
turned and walked away.


The chip can sting plaintiff's eyes so badly he cannot see;
it can pound on plaintiff's heart. It can and does,
interfere with his breathing. These effects occur daily.
Indeed, it feels exactly as if someone is "punching" on
plaintiff. Plaintiff can ice the chip, or place hot drinks
over the area, or squish on the area where it is located
with a pen or other object; all stop its operation for a
matter of seconds, and years of doing this have worn the
damn thing away. But the fact remains; it has to come out,
and now is the time.
Plaintiff had been wondering about defendant's behavior on
this subject for some time; at least since August 2007,
when he received a telephone call from defendant Kurt M.
Jensen, congratulating him for obtaining a job, which
plaintiff had in fact had just left that very same day.
Plaintiff did not inform anyone of this job, nor had spoken
to Judith R. Jensen about it. When he inquired Judith
informed plaintiff she had not spoken to Kurt M. Jensen at
all recently. There was no way Kurt M. Jensen could know
this fact about plaintiff's life as it occurred that day.
In fact, plaintiff believes this is how Bernard C. Jensen
became informed about plaintiff's injury, through Kurt M.
Jensen, a specialist in computer systems and technology. As
has been done before, the original perpetrators could learn
of plaintiff's family through plaintiff's conversation and
send information to them about the plaintiff's injury and
how to exploit it via the cell phone.
Defendants did not make any telephone calls and were quiet
for two weeks after these events on May 19. Then suddenly
Eric R. Jensen appeared to "find  an apartment" for Judith
R. Jensen. Kurt M. Jensen followed suit the following
week, coming up from San Diego. Bernard C. Jensen was with
the other defendants; he had completely changed his
appearance, having shaved off his mustache and beard,
something he had not done for over fifteen – twenty – five
years. He voiced his disapproval and tried hiding when
plaintiff noted this and took his picture. Defendant is
aware of his actions and what he is doing.

Defendants have aided and abetted each other in the causing of harm to plaintiff, sharing the information they have about plaintiff via
Their cell phones, and aided in the spreading of this information to other third parties, just as original perpetrators have done.
Their common purpose is to dispossess plaintiff, rendering it impossible economically for plaintiff to live or carry on his legal practice while continuing to exploit plaintiff's harm to his health, withhold the information they hold regarding plaintiff's health from plaintiff, and continue to harass and weaken plaintiff until serious bodily injury results to plaintiff.  Since defendants are able to locate plaintiff, and given defendants' voiced threats and capability to commit violence are on record, it is easily possible that plaintiff's personal safety is a major issue in the case at bar, and defendants must be stopped from accomplishing their wrongful and highly unlawful common plan.

**N.B.On the night of June 8, plaintiff was finishing this complaint.  He left the computer lab where he was working at 11 pm.**

**At 11:10- 11:15 pm, he was biking home on Contra Costa Boulevard in Pleasant Hill, and started to cross to go onto Susan Drive.  He saw from the corner of his eye a white van come speeding at him from Contra Costa Boulevard, heading toward his side.  It was defendant Bernard C. Jensen. Bernard C. Jensen had located plaintiff with his cell phone and was driving at him at great speed, intending to hit him.  Plaintiff dodged the van and proceeded back to Contra Costa Boulevard.  He watched defendant's van squeal around into a nearby parking lot and speed off south.  Plaintiff immediately sped home as fast as he could to call 911. Plaintiff gave his report, and seeks order from the court to stop defendants immediately through injunction so that investigation into defendants activities can immediately take place.**

### III.   INVASION OF PRIVACY

Invasion of privacy can take one, or a combination of, the four traditional torts of privacy.  Included are invasion of privacy by a public disclosure of private facts, publicity that places a person in a false light in the public eye, by intrusion on a person's solitude or private

affairs, and appropriation of a person's likeness.    This
complaint concerns itself with the first three of the four
traditional torts.

Invasion of privacy also includes invasion under Penal Code
Sect. 630-637.5 concerning eavesdropping on and archiving,
intercepting or receiving, and disclosure of information in
private communications.

A complaint for damages and for injunctive relief is
appropriate for wrongful eavesdropping or archiving of
private communications, for the wrongful interception
reception of cordless telephone communications, for the
wrongful disclosure of telegraphic or telephonic
communication, including computer use, and of trespassing
for the purpose of committing an invasion of privacy.

General, special, and punitive damages and injunctive
relief are available for an invasion of privacy by
intrusion on a person's solitude or into his or her private
affairs.

The right of privacy is recognized in California, and an
invasion of the right by intrusion on solitude or into
private affairs is an actionable tort.

**Elements in the Allegations** in the complaint include:

The manner of the physical intrusion on solitude or into
private affairs.

The offensiveness and objectionableness to a reasonable
person of ordinary sensibilities of the intrusion.

The private nature of the place or thing intruded upon (see
Schulman v. Group W Prods Inc (1998) 18 Cal 4th 200, 231, 74
Cal Rptr. 2d 843, 955 P.2d 469; Sears, Roebuck and Co.
(1973) 33 Cal App. 3d 654, 659-60, 109 Cal Rptr 269.

An allegation for general compensatory damages and special
damages and punitive damages to make an example of and to
punish defendants for their wrongful conduct, and
allegation to support injunctive relief is available (see
Leavy v. Cooney (1963) 214 Cal. App. 2d 496, 504, 29 Cal
Rptr. 580).

**Measure of damages**

For the wrongful act of breach and invasion of privacy, the measure of damages is the amount which will compensate plaintiff for all of the detriment legally (proximately) caused, whether it could have been anticipated or not.

**Injunction, When Allowed**

A final injunction may be granted to prevent the continuing breach and invasion into a plaintiff's privacy,

1)      where pecuniary compensation would not afford adequate relief;
2)      where it would be extremely difficult to ascertain the amount of compensation which would afford adequate relief; or
3)      where the restraint is necessary to prevent a multiplicity of judicial proceedings

Cases in which an injunction may be granted:

a)      An injunction to prevent further intrusion into a plaintiff's privacy and seclusion may be granted in the following cases:

1)      When it appears by the complaint that the plaintiff is entitled to the relief demanded, and the relief, or any part thereof, consists in restraining the commission of or continuance of the act complained of, either for a limited period or perpetually.
2)      When it appears by the complaint or affidavits that the commission or continuance of some act during the litigation would produce waste, or great or irreparable injury, to the plaintiff.
3)      When it appears, during the litigation, that a party to the action is doing, or threatens, or is about to do, or is procuring or suffering to be done, some act in violation of the rights of another party to the action respecting the subject of the action, and tending to render any judgment at law ineffectual.
4)      When pecuniary compensation would not afford adequate relief.
5)      Where it would be extremely difficult to ascertain the amount of compensation which would afford adequate relief.

6)     Where the restraint is necessary to prevent a
multiplicity of judicial proceedings.

## Argument

Because defendants are able to know plaintiff's location,
conversations and private doings by exploiting plaintiff's
personal situation, they are able to use and exploit the
information gained from plaintiff to invade plaintiff's
privacy.  Defendants could use this information to:

- trespass onto plaintiff's property; knowing where
plaintiff is, and knowing where Judith R. Jensen works and
her typical work schedule, defendants could easily cause,
and did cause, damage to plaintiff's property; throw feces,
beer cans, cigarette butts, and other garbage into the
front and back yards; damage the garden furniture kill
plants (over $1500 of plaintiff's bonsai plants, all of
them, were destroyed).

-show an awareness of plaintiff's activities; showing up at
the place and time plaintiff announces; thus defendants
could approach people plaintiff meets in business and
communicate information to these third parties to humiliate
plaintiff and interfere with plaintiff's business.

-make crank telephone calls or knock on plaintiff's door
and run away when they knew plaintiff was there

-be aware when plaintiff is using the computer and hack
into plaintiff's information stored on his computer or
elsewhere or interfere with the operation of plaintiff's
computer or elsewhere, rendering the computer plaintiff is
using at the time ineffective and inoperable.  Plaintiff
has numerous copies of hard evidence where his personal
computer was hacked and interfered with, as well as
printouts of numerous obscene e-mails and viruses sent to
his e-mail.

> The results of their activities, as documented in
> exhibits, show defendants' knowledge and intent to
> invade plaintiff's private affairs, with the
> resultant damage caused from defendants' behavior.
>                **IV.        DEFAMATION**

In an action for libel or  slander it is not necessary to
state in the complaint any extrinsic facts for the purpose
of showing the application to the plaintiff of the

defamatory matter out of which the cause of action arose; but it is sufficient to state, generally that the same was published or spoken concerning the plaintiff.

## Libel Per se

A libel on its face, or libel per se, is a libel that is defamatory of the plaintiff without the necessity of explanatory matter such as an inducement, an innuendo, or any other extrinsic fact (Cal CIF Code Sect45a);

Language may be libelous on its face even though it may also be susceptible to be, on the surface, of an "innocent" interpretation or explanation. The test is whether a defamatory meaning appears from the language itself without the necessity of explanation or the pleading of extrinsic facts. If it does, whether the charge be directly made or merely implied, the publication- without averment, colloquium, or innuendo-will in itself, constitute a libel (MacLeod v. Tribune Publ'g Co (1959) 52 Cal 2d 536, 549, 343 P. 2d 36; Barnes-Hind Inc v. Superior (1986) 181 Cal App 3d 377, 381, 385 226 Cal. Rptr. 354)

## Slander

Slander includes those defamatory statements that are less permanent and more transitory in nature. Slander is a false and unprivileged publication, orally uttered, and also communications by radio or any mechanical or other means that tends to injure him or her in respect to his or her office profession, trade or business, or by imputing something with reference to his her office profession trade or business has a natural tendency to lessen its profits, and that by natural consequence, causes actual damage. (Cal Civ Code Sect. 46)

## Slander per se

Statements can be slanderous per se even though they do not appear to be defamatory on their face and could possibly have an "innocent" interpretation. Jarman v. Rea (1902) 137 Cal. 339, 345-6, 70 P. 216; White v. Valenta (1965) 234 Cal. App. 2d 243, 251-4, 44 Cal Rptr. 241.

Thus, if words can be shown too have carried a meaning that
made them slanderous within any of the categories of Cal
Civ Code 46, damages are presumed, and there is no need to
plead and prove special damages to sustain a cause of
action. (see Jarman, White v. Valenta (1965) 234 Cal. App.
2d 243, 252, 44 Cal Rptr 241)

**Defamation Elements:**

1) Publication

An action for defamation must allege that the defamatory
matter was published, or communicated, to some third
person. (see Draper v. Hellman Commercial Trust & Sav. Bank
(1928) 203 Cal. 26, 39 263 P. 240 (libel); Cunningham v.
Simpson (1969) 1 Cal. 3d 301, 307, 81 Cal. Rptr 855, 461
P.2d 39 (slander). There is no requirement that the
statement be disseminated widely; a slanderous statement
heard by one person is no less a slander than that heard by
a multitude. ( cf. Cunningham, p307)

**2) Colloquium**

The fact that a person is not named in a defamatory
statement does not preclude words clearly conveying a
meaning within one of the statutory classifications of
libel and slander from being actionable per se (Washer v.
Bank of Am.(1943) 21 Cal. 2d 822, 829, 136 P. 2d 297)

It is sufficient to state, that the defamatory matter out
of which the cause of action arose was published or spoken
of and concerning the plaintiff. (Cal. Civ Pro Sect 460,
(Washer p829; Carlisle v. Fawcett Publ'ns, Inc. (1962) 201
Cal. App 2d 733, 741, 20 Cal Rptr. 405) It is not
necessary for the plaintiff to state any extrinsic facts
for the purpose of showing application to the plaintiff of
the defamatory matter out of which the cause of action
arose (Cal Civ Pro Sect. 460).

When the person defamed is not mentioned by name, it is
sufficient if the publication points to the plaintiff by
description or circumstances tending to identify him or her
and the jury can infer that the defamatory statement

applies to the plaintiff. (Di Giorgio Fruit Corp. v. AFL-
CIO (1963) 215 Cal App 2d 560. 569-70, 30 Cal. Rptr. 350.

## Innuendo

The purpose of innuendo is to declare what the words meant
to those to whom they were published.  When the words
themselves would convey to those who read or hear them a
defamatory meaning there is no occasion for the pleading of
an innuendo.
(cf.Washer; Bates v. Campbell (1931) 213 Cal, 438, 443 2P.
2d 383).

## Inducement

An inducement sets forth the extrinsic facts and
circumstances that coupled with the language uttered make
it actionable when standing alone the language used would
appear to be "innocent" (Grand v. Dreyfus (1898) 122 Cal
58, 62 54 P. 389.  Stated another way, an inducement
indicates that the words were understood in a defamatory
sense and shows the situation or opinion of the readers was
such that they derived a defamatory meaning from them
(MacLeod v. Tribune Publ'g Co. (1959) 52 Cal. 2d 536, 551,
343 P.2d 36)

## Falsity

Under common law, a defendant is liable if plaintiff shows
the falsity of the defamatory statement.  In some
situations, such as libel per se, the statement(s) are
deemed false without special pleading. ( see Lipman v.
Brisbane Elementary School Dist. (1961) 55 Cal 2d 224, 233,
11 Cal Rptr. 97 359 P.2d  465.

## Damages

General damages are defined as those damages for loss of
reputation, shame, mortification and emotional distress.
(Cal Civ Code 48(4)a.

In an action for damages based on language defamatory per
se, damage to the plaintiff's reputation is conclusively
presumed; he or she need not introduce any evidence of
actual damages in order to obtain or sustain an award of
damages.   (Contento v. Mitchell (1972) 28 Cal App. 3d 356,
358, 104 Cal Rptr 591 (slander), Di Giorgio (libel).
Hence, general damages are presumed as a matter of law in a
case of slander per se (Douglas V. Janis (1974) 43 Cal App.
3d 931, 940 118 Cal Rptr 280.

Continuing to engage in objectionable defamation after
repeated demand by plaintiff to cease supported punitive
damages.   Clark v. Celb Publ'ng Inc. (S.D. N.Y 1981) 530 F.
Supp 979, 984 (applying California law).

Damages for embarassment, humiliation, and other forms of
mental torment are recoverable for invasion of privacy
(Clark, 983, applying California law).

Injury to be compensated includes impairment of reputation
and standing in community, personal humiliation and mental
torment and suffering Diaz v. Oakland Tribune Inc, (1983)
139 Cal. App. 3d 118, 137, 188 Cal Rptr. 762.

### Argument
Defendants appear to have made it their job to exploit
plaintiff in any way possible.   Their activities have
extended to harming plaintiff's reputation with his
personal contacts and business interest.

        For example, plaintiff made an application to Robert
Half International in Oakland California for legal work.
He was interviewed by a young woman, who seemed
sufficiently personally impressed with plaintiff to give
plaintiff her personal telephone number and indicated that
he call her.
Plaintiff did so; yet when he did, he was suddenly informed
by the woman that she was quitting Robert Half, was moving
from her current apartment to an undisclosed location, and
that suddenly she would not be interested in him calling
her.

        It seems a reasonable inference to believe that given
the totality of the circumstances and background of
plaintiff's situation and injury, that someone gave
information of and concerning plaintiff to this woman, who
subsequently and suddenly decided plaintiff's reputation
was lower.

Given the crime involved in sharing information about
plaintiff in this way was a risk, it is a reasonable
inference to believe that suddenly leaving her employment
and changing her address was because she received
defamatory information about plaintiff.

Another example is when plaintiff tried to order
business stationery for his legal practice. When plaintiff
telephoned and made an appointment for the stationery
order, and subsequently appeared at the business site at
closing time to sign an agreement, everything appeared
great.
Only later suddenly things did not turn out great; the
printer kept delaying the order, what was promised as a one
week job suddenly turned into five weeks, with each excuse
from the printer becoming more absurd. When the plaintiff
finally received his order, it was riddled with mistakes in
printing; even the plaintiff's telephone number for his
legal practice was wrong. It seems reasonable to infer
that someone heard plaintiff's conversation and contacted
the printer concerning the plaintiff.
Another example is when plaintiff attempted to open an
account at the Bank of Walnut Creek in June 2006 in Orinda
California. Plaintiff obtained and signed all necessary
papers, and was going to return to open a safety deposit
box to protect his personal property. When plaintiff
showed up at the bank after telephoning them and telling
them he was coming over, he found the Orinda police had
been called by the branch manager. The manager informed
the shocked and bewildered plaintiff that someone had come
into the bank claiming they were plaintiff and wondered why
an account had been opened in their name. There would be
no way any third party would know of plaintiff's private
affairs (the bank had just closed, with no one inside, when
plaintiff was there initially, this is why he had to return
to open the safety deposit box).

Yet once again, somehow someone met with a third party
plaintiff was trying to do business with and contacted
them. Plaintiff had to demonstrate to the police who he
was, and did, yet somehow the manager decided plaintiff
should not have an account. Not only did the manager close
plaintiff's account over his protests, she submitted a
defamatory report about plaintiff to Chexsystems. When
plaintiff tried to open an account at Wells Fargo the very
next day, he was blocked from doing so. Mysteriously, when
plaintiff was setting up his legal business some time
later, suddenly all the information about plaintiff had
vanished, without any information or action from

plaintiff.  It is clear that whoever placed the defamatory
information about plaintiff with Chexsystems realized the
crime they were committing, and silently corrected it.
Plaintiff has other examples to share in court.
Related are defendant's actions concerning plaintiff and
Judith R. Jensen.  Plaintiff had personally observed
defendants when drunk discussing plaintiff with Judith R.
Jensen in August 2004.  Defendants made comments at that
time that plaintiff was of a character and disposition that
would greatly lower Judith R. Jensen's opinion of
plaintiff.  On subsequent occasions, whenever Judith R.
Jensen met with defendants, she would change in mood.  This
especially appeared to be the case after August 2004, when
plaintiff no longer felt comfortable being around
defendants Eric R. Jensen and Bernard C. Jensen.  Defendants
noticed this situation and exploited it, counting on
driving plaintiff out of the house and speak about
plaintiff to Judith.

Before meeting with defendants, Judith would be in a
more amiable mood toward plaintiff; after meeting with
them, her mood toward defendant would take on the same
general character plaintiff heard defendant themselves had
voiced about plaintiff.  It would be clear from Judith R.
Jensen's behavior after meeting with defendants that
something was being said about plaintiff by defendants each
and every time Judith met with them to lower Judith's
opinion about plaintiff in order to erode the relationship
between plaintiff and Judith and set plaintiff up to
becoming dispossessed.

## V. FRAUD/DECEIT

### Fraud

The concept of fraud includes anything that is intended to
deceive, including all statements acts, concealments and
omissions involving a breach of legal or equitable duty,
trust or confidence that results in injury to one who
justifiably relies thereon.  (Ach v. Finkelstein (1968) 264
Cal. App. 2d 667, 674, 70 Cal Rptr. 472 ).  More
particularly, fraud is made by a defendant with awareness
that it is or may be untrue, and with the intention that
the person to whom it is made act in reliance upon it.
(Wilke v. Coinway, Inc. (1967) 257 Cal. App. 2d 126, 136 64
Cal. Rptr. 845).

### Deceit

A deceit can be : 1) the suggestion, as a fact, of
something that is not true, by one who does not believe it
true; 2) the assertion of a fact, of something that is not
true, by one who has no reasonable ground for believing it
to be true; or

3)the suppression of a fact, by one who is bound to
disclose it, or who gives information or other facts that
are likely to mislead for want of communication of that
fact.

Liability for the tort of deceit is governed by Cal Civ
Code 1709, and defined in Cal Civ Code 1710.  Constructive
fraud is defined by Cal Civ Code 1573.  Compensatory
damages for deceit are governed by Cal Civ Code 1709 and
3333.  Punitive damages based on fraud are governed by Cal.
Civ Code 3294.

The elements of deceit are 1) a false representation or
concealment of a material fact susceptible of knowledge, 2)
made with knowledge of its falsity or without sufficient
knowledge on the subject to warrant a representation, 3)
with the intent to induce the person to whom it is made to
act on it, or refrain from so acting 4) and an act or
refrain from acting to that person's damage. (South Lake
Tahoe Gas Co. v. Hofmann Land Improvement Co. (1972) 25 Cal
App. 3d 750, 765, 102 Cal Rptr. 286; Balfour, Guthrie & Co.
v. Hansen (1964) 227 Cal App 2d. 173, 192-3 38 Cal Rptr
525.

**Negligent Misrepresentation**

Negligent Misrepresentation is a basis of tort recovery
separate and distinct from the tort of negligence; it is a
form of deceit.  A cause for action for deceit may be made
by one who had no reasonable ground for believing it to be
true (Cal Civ Code 1709, 1710 (2)) Gagne v. Bertran (1954)
43 cal 2d 481, 487-9, 275 P. 2d 15, Wilke v. Coinway Inc
(1967) 257 Cal App 2d 126, 136 64 Cal Rptr 845.

If a person asserts that a thing is true within that
person's personal knowledge, or implies knowledge on his or
her part, and the person's statement proves to be false,
that person is as culpable as if he or she had willfully
asserted something to be true that he or she knew to be

false, and is equally guilty of fraud. (Howell v. Courtesy
Chevrolet Inc (1971) 16 cal App 3d 391 , 402 94 Cal Rptr
33.

## Suppression or Nondisclosure of Fact

Fraud and deceit may consist of the suppression of a fact
By one who is bound to disclose it or who gives information
of other facts that are likely to mislead for want of
communication of that fact. (Cal Civ. 1710 (3); People v.
highland Fed Sav. & Loan(1993) 14 Cal App 4th 1692, 1718, 19
Cal. Rptr. 555; Stevens v. Superior Court (1986) 180 Cal
App. 3d 605, 608-10, 225 Cal Rptr. 624.

If concealment of a material fact is calculated to induce a
false belief, the distinction between active concealment
and affirmative fraud or misrepresentation is not
significant.   Both are fraudulent, and an active
concealment has the same force and effect as an active
fraud. (Outboard marine Corp. v. Superior Court (1975) 52
Cal App. 3d 30, 37 124 Cal Rptr 852).

## Intent

One who deceives another with the intent to induce that
person to alter, or refrain from altering, his or her
position to his or her injury or risk is liable for any
damages that the other person thereby suffers (Cal Civ Code
1709).

The required intent is the intent to induce reliance so
that the person defrauded alters, or refrains from
altering, his or her position, and is not the intent to
defraud (Gagne; De Zemplen v. Home Fed Sav. & Loans
Association (1963) 221 Cal App. 2d 197, 207, 34 Cal Rptr.
334.   The fact that negligent misrepresentation is made
actionable by Cal Civ Code 1710 (2) further indicates that
the intent to induce reliance, rather than the intent to
deceive, is the required intent. Hale v. George A. Hormel &
Co, (1975) 48 Cal App. 3d 73, 82-6 121 Cal Rptr. 144.

## Inference of Intent

An intent to induce the plaintiff to alter, or refrain from
altering, his or her position can be inferred from the fact
that the defendant made the representation with knowledge
that the plaintiff would act in reliance on it (Gagne; Eddy

v. Sharp (1988) 199 Cal;. App. 3d 858, 864 245 Cal Rptr 211
see Cal CivCode 1709, since direct proof of intent is often
impossible.

Intent is usually proved by inference from the fact of
concealment or from misrepresentation of material facts.
(Horn v. Guaranty Chevrolet  Motors (1969) 270 Cal .App 2d
477, 483, 75 Cal Rptr. 871.
**Reliance**

When there is fraud, a plaintiff relies upon defendant's
representation or suppression/concealment of material
facts.
Reliance is not required to be shown by direct evidence;
reliance may be inferred by surrounding circumstances.
Vasquez v. Superior Court (1971) 4 Cal 3d 800, 814, 94 Cal
Rptr. 796.

**Defendant having Superior Knowledge**

Plaintiff has right to rely on representations/ defendant's
conduct if defendant has superior knowledge and knows of
plaintiff's ignorance of subject matter.  Hartong v.
Partake Inc.  (1968) 266 Cal App 2d 942, 966 72 Cal Rptr
722.

**Untrustworthy Defendant**

Defendant who conceals material fact from plaintiff,
causing plaintiff to not take action against defendant, is
not permitted to assert plaintiff cannot seek damages
because of plaintiff's actual and justifiable reliance on
defendant's fraudulent concealment.  Brownlee v. Vang
(1965) 235 Cal App. 2d 465, 474, 45 Cal Rptr 458.

**Materiality**

In order to constitute actionable fraud or deceit, the
alleged false representation must be of a material fact.
(Adkins v. Wyckoff (1957) 152 Cal App. 2d 684, 689 313 P.2d
592)

To be material, the misrepresentation or fraud must be such
that the plaintiff would not have acted, or refrain from
acting, as the plaintiff did without the

misrepresentation. The fact represented or suppressed is deemed material if it relates to a matter of substance and directly affects the purpose for which the deceived party acted.

Concealment is material if the knowledge suppressed is so important that its mere repression amounts to fraud. (Handley v. Handley (1960) 179 Cal App. 2d 742, 746 3 Cal Rptr 910)

## Burden of Proof; Inference Permitted

The facts constituting fraud are determined from the circumstances of each case and fraud may be proved by direct evidence or inferred from these circumstances. Fraud may be proved by inference and circumstantial evidence (Vogelsgang v. Wolpert (1964) 227 Cal App 2d 102, 111 38 cal Rptr 440, because it is often impossible to prove directly. The circumstances surrounding the transaction and the relationship of the parties will often be facts from which fraud may be inferred (Balfour, Guthrie & Co v. Hansen (1964) 227 Cal App 2d 173, 192 38 Cal Rptr 525.

## Damages

A plaintiff may recover for fraud if the plaintiff shows that because of the defendant's misrepresentations or concealment or suppression of material facts, plaintiff has sustained pecuniary damage or injury from having been put in a position worse than he or she would have occupied had there been no fraud. (R.D. Reeder Lathing Co. v. Cypress Ins. Co. (1970) 3 Cal App. 3d 995, 999 84 Cal Rptr 98)

## Compensatory Damages

One who willfully deceives another with intent to induce him or her to alter or refrain from altering his or her position to his or her injury or risk, is liable for any damages that the injured party thereby suffers (Cal Civ Code 1709).

## Argument
Here, defendants have information about plaintiff, and specifically plaintiff's injury. Instead of sharing this information with plaintiff, they have chosen to withhold it

and exploit it for their own selfish ends of harming and
injuring plaintiff, possibly because he is an attorney who
put himself through school and they are not.
It appears from their threats and threatening conduct on
record, coupled with their exploitation of plaintiff in
this manner, and their apparent behavior to act as if
nothing is wrong while giving themselves away, that
defendants intend to keep this information to themselves
for the purposes mentioned above.
They shall not be able to do so, and plaintiff requests
this court for injunctive relief in order to complete
discovery with defendants, in order to prevent the
destruction of evidence.

## VI. Conversion

Conversion is the intentional act to seriously cause damage
to, interfere with, or destroy plaintiff's possessory
interest in a chattel.
Here, in May 2004, defendant Eric R. Jensen, on his arrival
at 1979 Elinora Drive for housing, decided to deprive
plaintiff of the enjoyment of the back garden and what it
contained.  He began eating as many oranges he could cram
in his mouth from the orange trees, sometimes eating as
many as seven a day, until the trees were denuded in a
week.  Plaintiff had a collection of sunflowers he was
growing.  In August 2004, defendant Eric R. Jensen got
drunk and destroyed them, pulling them out and leaving them
on the ground.  When plaintiff spent all night replanting
them in the dark, defendant Eric R. Jensen went out in the
morning and completely destroyed them.
Small items disappeared from plaintiff's room, some
cherished irreplaceable photographs, a cassette tape of
rare music. Plaintiff put a lock on his door, the oranges
were subsequently poisoned and did not fruit until 2007,
and plaintiff never has grown sunflowers again to this day.

## VII. Assault

Assault is the intentional causing of apprehension of
offensive contact by a reasonable person.  From May 2004 to
August 2004, Eric R. Jensen on numerous occasions
threatened to harm plaintiff, the last time when plaintiff
encountered defendant Eric R. Jensen coming home at 3:30 am
and making a huge amount of noise from running into the
furniture and stumbling around.  Just seeing plaintiff
watching him in this state put defendant in a violent rage,
causing plaintiff to run to his bedroom to close and lock
the door, just in time to prevent Eric R. Jensen, drunk as

usual, from getting in and harming plaintiff.  Eric R.
Jensen then proceeded to roar and rant at the closed door
before grabbing his things and storming out.  Because of
this continued behavior, plaintiff later asked that
defendant Eric R. Jensen live elsewhere.

## VIII. Intentional Infliction of Emotional Distress

The intentional infliction of severe mental or emotional
distress by willful and outrageous conduct constitutes
actionable tort for which the victim may recover damages.
(State Rubbish Collectors Ass'n v Silznoff (1952) 38 cal 2d
330, 336-9, 240 P. 2d 282; Spackman v. Good (1966) 245 Cal
App 2d 518, 528-9, 54 cal Rptr 78.

### Elements:

A prima facie case of intentional infliction of emotional
distress are the following: Outrageous conduct by the
defendant; the intentional causing or reckless disregard of
the probability of causing, emotional distress; and the
plaintiff's suffering severe or extreme emotional distress
and actual and proximate causation of the emotional
distress by the defendants outrageous conduct.  Hernandez
v. General Adjustment bureau (1988) 199 Cal App3d 999,
1007, 245 Cal Rptr 288; Fletcher v. Western Nat'l Life Ins
Co. (1970) 10 Cal App 3d 376, 394, 89 Cal Rptr 78.  The
conduct must be directed at the plaintiff, or occur in the
presence of a plaintiff of whom the defendant is aware.
Potter v. Firestone Tire (1993) 6 cal 4th 965, 1001-3, 25
Cal Rptr 2d 550, 863 P. 2d 795.

### Argument

Here, there is no question defendants' behavior is directed
at plaintiff.  They have trespassed on plaintiff's
property, entered into his home, thrown feces beer cans
garbage drink bottles, onto his property, destroyed flowers
trees plants and garden furniture.  They have pulled down
fences separating plaintiff from neighbors; plaintiff had
to run around and pay out of his own pocket to fix and
shore them up.  They have crank called plaintiff,
interfered with and destroyed plaintiff's computer and
interfered with plaintiff's business operations.
Defendants have defamed plaintiff, assaulted plaintiff, and
interfered with plaintiff's business relations.  Defendants
have invaded plaintiff's privacy and intruded on his
seclusion; defendants have repeated interfered with
plaintiff's business affairs, and have tried to destroy his

legal practice. Defendants have threatened plaintiff with bodily injury and harassed plaintiff.

Now, plaintiff's are involved with the exploitation and injury of plaintiff through the use of the metal microchip placed in his mouth and are causing serious injury to plaintiff's body and personal life. Finally, defendants are seeking to drive plaintiff out of his home and create total, irretrievable loss and stripping of plaintiff's personal possessions, investments in his legal practice and business, his business clothing, books, and legal accoutrements.

In short, there is nothing in defendants' behavior that indicates they are doing anything but directing their outrageous behavior toward plaintiff, and this simmering hell that goes far beyond all bounds of human decency that plaintiff has endured for nearly eight years without cease must be stopped through the discovery process and injunctive relief from the court.

### VIIII. Negligent Infliction of Emotional Distress

California recognizes a right to recover damages for serious emotional distress in a negligence action. (Molien v. Kaiser Hosp (1980) 27 Cal 3d 916, 930, 167 Cal Rptr 831). A plaintiff who has suffered physical injury may recover general damages for emotional distress, pain suffering, along with other compensatory damages (Merrill v. Los Angeles Gas (1910) 158 Cal 499, 511-3, 111 P. 534; Niles v. City of San Rafael (1974) 42 Cal App. 3d 230, 244, 116 Cal Rptr 733;)

California has discarded the rule that damages for negligent infliction of emotional distress will not be awarded unless there is some manifestation of physical injury. The genuineness of claims is now safeguarded by the general standard of proof using the jurors own experience to determine whether or not and to what extent the defendant's conduct caused emotional distress see Molien supra.

### Fear for Personal Well-Being

Under the modern rule of liability, one may recover for emotional distress suffered as the result of a negligent act that placed the plaintiff in fear for his or her personal well-being, regardless of whether there is any physical impact and regardless of whether the emotional distress is accompanied by any physical manifestations of injury (Molien p924-30)

**Elements**

All the elements of the tort of negligence are the elements in NIED, with emotional distress the resulting injury.

## X. Nuisance

The legislature has defined a private nuisance as every nuisance not included in the definition of public nuisance Civ. Code 3481. (cf. Public nuisance defined in Civ Code 3480. The essence of a private nuisance is an interference with the use and enjoyment of a property right. Any interest sufficient to be dignified as a property right is sufficient to support an action based on private nuisance. (Venuto v Owens (1971) 22 cal App. 3d 116, 124-5; 99 cal Rptr 350).

### Elements

To constitute a nuisance, the interference with the use and enjoyment of a property right must be unreasonable and cause substantial harm. The general rule is the unreasonable or unlawful activity that causes substantial injury to the reasonable use and enjoyment of property is a nuisance that must be abated. (Hutcherson v. Alexander (1968) 264 Cal App 2d 126, 70 cal Rptr 366.

In determining what is reasonable courts look to the totality of the circumstances and balance the interests of both parties.

### Argument

Here, defendants for years have been interfering with plaintiff's enjoyment of his property. They have trespassed onto the property to kill plants, trees flowers and have damaged garden furniture and fixtures.

Defendants have thrown feces, alcohol bottles, malt liquor cans, beer cans, cigarettes, garbage and junk onto and into plaintiff's property and yard. They have changed the sprinkler settings, shutting them off to cause plants to die from lack of water. They have damaged and destroyed sprinkler heads to prevent them from functioning and watering plants so they die. They have damaged the mail box and required plaintiff to purchase materials for and

labor with his time to build multiple fences to attempt to keep defendants out from damaging his property further.

Even these measures were not enough for defendants; they then proceeded to attempt to pull on the fences to bring them down and require plaintiff to effectuate further repair.   Plaintiff was required to labor to shore up and secure the fences to prevent them falling down from defendants wrongful activity.

All of defendant's activities are not only unreasonable, they are unlawful, and any balancing would be in favor of the plaintiff abating defendant's wrongful activities.

## XI.  Trespassing

Trespassing is the intentional tortious entry onto another's land.   Entry can be by person or by object a defendant causes to enter onto the land.

Here, defendants have thrown feces, alcohol bottles, malt liquor cans, beer cans, cigarettes, garbage and junk onto and into plaintiff's property and yard.   They have changed the sprinkler settings, shutting them off to cause plants to die from lack of water.   They have damaged and destroyed sprinkler heads to prevent them from functioning and watering plants so they die.   They have damaged the mail box and required plaintiff to purchase materials for and labor with his time to build multiple fences to attempt to keep defendants out from damaging his property further.

There is no question defendants have trespassed repeatedly onto plaintiff's land, and unless there is order and injunctive relief from the court, they will continue to do so.

## XII. Breach of Contract:

The following elements of a contract or agreement are essential: (Cal Civ Code 1550; Schaefer v. Williams (1993) 15 cAL aPP 4TH 1243, 1246, 19 Cal Rptr 2d 212 (promise by one party is not a contract); Marshall & Co. v. Weisel (1966) 242 Cal App. 2d 191, 196, 51 Cal Rptr. 183):

Cal Civ Code 1556: Generally all persons are capable of contracting an agreement, except minors and persons deprived of civil rights;

The parties consent

sufficient consideration and,

a lawful purpose or object.  Cal Civ Code 1667 et seq.

**Consent**

Consent of the parties must be freely given(Cal Civ Code
1565)  An apparent consent is not real or free when
obtained through duress, menace, or fraud. (Cal Civ Code
1567) see Jones v. Adams Financial Services (1999)  71 Cal.
App. 4th 831, 840 84 Cal Rptr 2d 151.

**Mutuality**

Requirement

The consent of the parties must be mutual (Cal Civ Code
1565) Consent is not mutual unless the parties agree on the
same thing in the same sense.  (Cal Civ Code 1580; see The
Money Store v. Southern California Bank (2002) 98 Cal. App
4th 722, 728 120 Cal Rptr 2d 58; Weddington Products Inc. v.
Flick (1998) 60 Cal App 4th 793, 811.

**Objective Test**

The mutuality of the parties' consent must be gathered from
their words and acts, judged by a reasonable standard,
which must manifest an intention to agree in regard to the
matter in question.  Under this objective test a "meeting
of the minds" is unnecessary.  A party may be bound even
though that party misunderstood the terms of a proposed
contract and actually had a different undisclosed intention
(Myers v. Carter (1963) 215 Cal App 2d 238, 241, 30 cal
Rptr 91.)

**Consideration**

Consideration is an act or return promise, bargained for
and given in exchange for a promise, which either gives a
benefit to the promisor or imposes a burden on the

promisee.  Generally, courts consider consideration is
given as long as it is something of legally cognizable
value.  (Cal. Civ. Code 1605; Flojo International v.
Lassleben (1992) 4 Cal App 4th 713, 719, 6 Cal Rptr 2d 99;
Peterson Tractor v. State Board of Equalization (1962) 199
Cal App. 2d 662, 670, 18 Cal Rptr. 800)


## Mutuality of Obligation Required


When the parties exchange promises as consideration in
their attempt to contract, the promises must be mutual in
obligation.    (see Asmus v. Pacific Bell (2000) 23 Cal 4th
1, 14-15, 96 Cal Rptr 2d 179, 999 P. 2d 71.


## Equitable Estoppel


Evidence Code 623 provides that a party who intentionally
and deliberately led another to believe a particular thing
to be true and to act on that belief, may be prevented in
litigation from contradicting it.  It includes four
elements: 1) the party to be estopped must be apprised of
the true facts; 2) must intend that his or her conduct be
relied upon by the other party; 3) the party asserting the
estoppel must be ignorant of the true facts; and 4) the
other party asserting the estoppel must rely on the conduct
or statement to that party's injury.  (Juran v. Epstein
(1994) 23 Cal App 4th 882, 28 Cal Rptr 588; Battuello v.
Battuello (1998) 64 Cal App 4th 842 847-8, 75 Cal Rptr 2d
548.)


## Unconscionable Contract


Unconscionability generally includes the absence of
meaningful choice on the part of one of the parties with
terms that unreasonably favor the other party. (Allan v.
Snow Summit Inc (1996) 51 Cal App 4th 1358, 1376-7, 59 Cal
Rptr 2d 813; Carboni v. Arrospide (1991) 2 Cal app 4th 76,
82-3, 2 Cal Rptr 2d 845; West v. Henderson (1991) 227 Cal
App 3d 1578, 1586 278 Cal Rptr 570)

Here, plaintiff made agreement with defendant Judith R. Jensen to be able to have the stability needed to build his business and address and stabilize his health.   Plaintiff paid Judith over $2000, and promised to repay Judith R. Jensen for the consideration of allowing him to build his business at 1979 Elinora Drive and repair his damaged health.   Hence there is an agreement for plaintiff to restore his health and business income as an attorney, and preserve his personal property and personal safety.

Fortunately, plaintiff is now able to repair his health, since he is aware of what the problem is, and is taking the steps to have the metal chip in his mouth removed through this case at bar. The plaintiff needs to have injunctive relief from the court so plaintiff can stay in his home and conduct his case.

**Verification**

I, Christian K. Jensen Esq., am the plaintiff in the above-entitled action.  I have read the foregoing complaint and know its contents.  The same is true of my own knowledge, except as to those matters that are alleged in the complaint on information and belief, and as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:   6/19/08

Signature: